IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No. 09-cv-02683-WYD-MEH

ERIC SCHMIDT,

    Plaintiff,

v.

DJO, LLC; and
I-FLOW CORPORATION,

    Defendants.

---

# ORDER

---

I. <u>INTRODUCTION</u>

THIS MATTER is before the Court on motions to dismiss filed by Defendants I-Flow Corporation ["I-Flow"] (ECF No. 17) and DJO, LLC ["DJO"] (ECF No. 24). These motions seek to dismiss Plaintiff's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the basis that they are barred by the statute of limitations.

II. <u>BACKGROUND</u>

Plaintiff Eric Schmidt ["Plaintiff"] filed a complaint on November 16, 2009. Plaintiff alleges that he suffers from post-arthroscopic glenohumeral chondrolysis ["PAGCL"] caused by continuous postsurgical infusion of local anesthetics manufactured by the Abbott Defendants, also known as the Pharmaceutical Defendants (who have been dismissed from the case) and delivered via a pain pump

manufactured by co-Defendant I-Flow and distributed by Defendant DJO (referred to collectively by Plaintiff as "the Manufacturer Defendants").

Specifically, the Complaint alleges that on or about February 3, 2003, Plaintiff underwent arthroscopic surgery on this right shoulder necessitated by right shoulder instability and a SLAP tear. (Compl., ¶ 12.) Other than the above conditions, at the time of the surgery Plaintiff had a normal shoulder joint with no significant cartilage deterioration, arthritis, or congenital shoulder pathology. (*Id.*, ¶ 13.) During the surgery a pain pump catheter infusing Marcaine manufactured by one or more of the Pharmaceutical Defendants was inserted into the intra-articular shoulder joint space in an effort to provide Plaintiff with continuous post-surgical pain relief. (*Id.*, ¶ 14.) The pump itself was allegedly manufactured by I-Flow or DJO and marketed and sold under the DJO brand. (*Id.*, ¶ 5, 15.)

After the first surgery, Plaintiff alleges that he began experiencing increased pain, stiffness, weakness and reduced range of motion in his right shoulder. (Compl., ¶ 16.) On August 6, 2003, an MRI demonstrated Plaintiff's right shoulder had developed PAGCL with cartilage thinning to bone over the humeral head and glenoid fossa, a serious and permanent condition. (*Id.*, ¶ 16.) The Complaint alleges that PAGCL is a devastating complication of shoulder arthroscopy where the cartilage in the shoulder begins to deteriorate months after surgery, causing pain, stiffness, and sometimes the inability to use the affected shoulder. (*Id.*, ¶ 19.) Without this cartilage, the shoulder cannot move smoothly and properly. When severe cartilage loss has occurred, shoulder replacement surgery is necessary. (*Id.*)

On January 15, 2004, Plaintiff underwent a second arthroscopic surgery on his right shoulder wherein his surgeon performed debridement and subacromial decompression, without the use of an intra-articular pain pump, in an effort to provide some temporary symptomatic relief. (Compl., ¶ 17.) By the time of this second surgery, Plaintiff was already suffering from severe glenohumeral degenerative joint disease. (*Id.*) Plaintiff alleges that he then continued to experience increased pain, stiffness, popping, shoulder weakness and reduced range of motion as a result of his PAGCL caused by the continuous infusion of Marcaine through the pain pump used in the first surgery. (*Id.*, ¶ 18.)

In order to obtain relief, Plaintiff alleges that he ultimately required a third surgery on July 1, 2004, involving a humeral head replacement with glenoid resurfacing. (Compl., ¶ 20.) Plaintiff asserts that in addition to the permanent impairment associated with his current condition, it is likely he will require additional prosthetic shoulder surgery in the future. (*Id.*)

The Complaint also alleges that the Defendants actively concealed the dangers of the pain pumps and their use of Marcaine from Plaintiff, the worldwide consuming public, and medical professionals. (Compl., ¶¶ 30-33.) Further, it alleges that Plaintiff "did not know and was not made aware of the full extent of the risk and dangers associated with the pain pump and Marcaine until 2009." (*Id.*, ¶ 34.)

Plaintiff asserts the following claims against the remaining Defendants: (1) negligence and recklessness; (2) failure to warn - strict liability; (3) defective design - strict liability, (4) breach of implied warranty, (5) breach of express warranty, and (6)

negligence per se based on their alleged violation of the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 301 et seq. and other laws.

Defendants assert that based on the admissions in the Complaint that Plaintiff was diagnosed with PAGCL on August 6, 2003, underwent a second surgery on January 15, 2004, to obtain temporary "symptomatic relief" and a third surgery on July 1, 2004 "in order to obtain relief from the PAGCL", the statute of limitations for each of Plaintiff's claims is barred, having begun to run at the latest on July 1, 2004. Defendants also assert that Plaintiff ignored his duty to investigate and should have discovered his injury or the cause thereof through the exercise of reasonable diligence. Accordingly, they seek dismissal of Plaintiff's claims.

III. ANALYSIS

A. Standard of Review

The Federal Rules of Civil Procedure provide that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted). "A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 1950.

Plaintiff, however, attaches an affidavit to his response. The Tenth Circuit has stated that "if matters outside the pleading are presented to and not excluded by the court, [a Rule 12(b)(6) motion] shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such motion by Rule 56." *David v. City & County of Denver,* 101 F.3d 1344, 1352 (10th Cir. 1996). However, courts have broad discretion in determining whether or not to accept materials beyond the pleadings. *Lowe v. Town of Fairland*, 143 F.3d 1378, 1381 (10th Cir. 1998).

I exercise my discretion not to consider the extrinsic evidence as I find that the motions are better analyzed at this stage of the litigation under Rule 12(b)(6). Discovery has not been conducted in this case as to the date Plaintiff allegedly discovered his injuries or other issues regarding the statute of limitations, and I find that a summary judgment motion at this stage is improper. I also note that the affidavit would not, in any event, impact my analysis. Accordingly, I consider the motion under the standards of

Rule 12(b)(6), not Rule 56, and conversion of the motion to a summary judgment motion is not required.

> B. Whether Dismissal is Appropriate in this Case Because the Claims Are Time-Barred
>
> > 1. Breach of Warranty Claims

Defendants assert that the breach of warranty claims are time barred by Colo. Rev. Stat. §§ 4-2-725 and 13-80-101(a) and that the remaining negligence and strict liability counts are time barred by Colo. Rev. Stat. § 13-80-106(1). I first address the breach of warranty claims (the Sixth and Eight Claims for Relief).[1]

Sections 4-2-725 and 13-80-101(a) of the Colorado Rules of Civil Procedure establish a three year statute of limitations for all warranty claims. *Id.*; *see also Wieser v. Firestone Tire & Rubber Co.*, 596 F. Supp. 1473, 1474-75 (D. Colo. 2004). These statutes are based on contract actions under Colorado's version of the Uniform Commercial Codes. Colo. Rev. Stat. § 4-2-725(1) provides that "[a] cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." In other words, a breach of warranty claim occurs when tender of delivery is made. *Id.*, § 4-2-725(2); *see also Carabello v. Crown Controls Corp.*, 659 F. Supp. 839, 842 (D. Colo. 1987). Pursuant to these statutory provisions, since the pain pump was placed into Plaintiff's shoulder on February 3, 2003, the statute of

---

[1] The Second, Fifth, Seventh and Ninth Claims for Relief against the Abbott Defendants were previously dismissed in their entirety as they were asserted only as to those Defendants. The remaining claims were asserted either as to the remaining Defendants only or the remaining Defendants and the Abbott Defendants.

limitations on the breach of warranty claims expired on February 3, 2006, three years after it was delivered to Plaintiff.

Plaintiff argues, however, that the statutes relied on by Defendants relating to a sale of a product are not applicable in this case. Instead, he asserts that courts in Colorado and other jurisdictions have held that the use of a medical device or substance as part of a surgery is not a sale. Under the framework of those cases, the surgeon's implantation of the pain pump to provide Plaintiff with pain relief should be characterized as "services" rather than a "sale" and the two-year statute of limitations in Colo. Rev. Stat. § 13-80-108(6) should apply. Under § 13-80-108(6), the cause of action accrues on the date the breach is discovered or should have been discovered by the exercise of reasonable diligence. *Id.*

I find no merit to Plaintiff's argument. The cases cited by Plaintiff all dealt with a defendant who had provided some type of medical service and a breach of warranty claim was asserted as to a product used incidentally during the service. *See, e.g., Sloneker v. St. Joseph's Hosp.*, 233 F. Supp. 105, 107 (D. Colo. 1964) (claims related to medical operation at the hospital which required a blood transfusion service; court noted that the service is the predominant part of a blood transfusion and the extra charge for the blood is not a sale but merely an incidental feature of the services rendered); *Redwine v. Baptist Gen. Convention of State of* , 681 P.2d 1121, 1124 (Okla. App. 1982) (breach of warranty claim involving heart-lung machine which was used during open-heart surgery and charged to plaintiff involved services rather than a sale related to the machine because the "doctors and hospitals who furnish and use these

-7-

products are principally engaged in the furnishing of *services* and are themselves the ultimate purchasers) (emphasis in original); *Perlmutter v. Beth David Hosp.*, 123 N.E. 2d 792, 793 (N.Y. Ct. App. 1954) (stating that a "patient bargains for, and the hospital agrees to make available, the human skill and physical material . . . [s]uch a contract is clearly one for services, and, just as clearly, it is not divisible").

In this case neither Defendant DJO or I-Flow provided any medical services. Instead, the allegations of the Complaint make clear that they only manufactured and sold the pain pump at issue, *i.e.,* the sale of a "good." Under this circumstance, the Tenth Circuit has held that § 4-2-725(2) relied on by the Defendants is the applicable statute. *Norris v. Baxter Healthcare Corp.*, 397 F.2d 878, 888 (10th Cir. 2005). Further, the Complaint does not refer to any services performed by the Defendants, only to the sale of the product at issue. Accordingly, I find that the breach of warranty claims are barred by the three year statute of limitations in Colo. Rev. Stat. § 4-2-725 and § 13-80-101(a) as argued by the Defendants. The motions to dismiss are thus granted as to these claims.

### 2. Negligence and Product Liability Claims

I now turn to Plaintiff's negligence and product liability claims (the First, Third, Fourth, Fifth, and Tenth Claims for Relief). All the parties agree that these claims are governed by Colo. Rev. Stat. §§ 13-80-102(1) and 13-80-106(1). These statutes establish a two year statute of limitations for all tort, strict liability and product liability actions, regardless of the substantive theory on which the product liability action is based. Accrual of the claim is subject to the discovery rule, meaning that the cause of

action accrues on the date both the injury and its cause are known or should have been known by the exercise of "reasonable diligence". *Id.*, § 13-80-108(1).

Defendants assert that Plaintiff became aware of his injury on August 6, 2003, when the MRI study showed PAGCL of his right shoulder or, at the latest, on July 6, 2004 when he had his last surgery. At that time, it is argued by Defendants that Plaintiff was obligated to investigate the alleged injury, citing the Tenth Circuit's decision in *Norris*, 397 F.3d at 888. Defendant DJO asserts that it is "unbelievable" or "implausible" that Plaintiff failed to investigate the cause of his shoulder injury during the six-year period between 2003 and 2009. Accordingly, Defendants conclude that Plaintiff's cause of action accrued either on August 6, 2005 or July 6, 2006, and is time barred since this action was not brought until 2009.

In addressing this issue I must look to the allegations of the complaint to supply the relevant facts. *See Smith v. United States*, 561 F.3d 1090, 1103 (10th Cir. 2009). While Defendants assert that Plaintiff's allegations are conclusory, I disagree. Accepting the allegations of the Complaint as true and construing them in the light most favorable to Plaintiff, as required, I find that Defendants' motions to dismiss these claims must be denied. The Complaint alleges that Plaintiff "did not know and was not made aware of the full extent of the risks and dangers associated with pain pumps and bupivacaine until 2009." (Compl., ¶ 34.)

Further, while Plaintiff was diagnosed with PAGCL after an August 2003 MRI and had subsequent surgeries after his initial surgery, nothing in the Complaint suggests that Plaintiff had any reason to believe or information to suggest that his condition was

related to the use of the pain pump catheter during his first surgery or that investigation was warranted on this issue any earlier than Plaintiff's discovery of the problem in 2009. There is also nothing to suggest Plaintiff could have discovered the cause of his injury earlier than 2009 through an investigation, or indeed that he knew of facts which even triggered a duty to investigate. This is far different from the *Norris* case relied on by Defendants where the plaintiff's surgeon told her he believed that the product at issue, breast implants, was causing the problem, and the plaintiff then failed to investigate. *Norris*, 397 F.3d at 888.

Indeed, the Complaint alleges that Defendants actively concealed the dangers of the pain pumps and their use of Marcaine from Plaintiff, the worldwide consuming public, and medical professionals. (Compl., ¶¶ 30-31.) Accepting this as true, a reasonable inference from the Complaint is that the dangers of the pain pump were actively concealed until 2009 when Plaintiff discovered the cause of his injuries. If this is accurate, no investigation could have revealed the dangers of the pump. Even if the matter was not actively concealed this entire time period, the question is still when Plaintiff learned or should have learned the facts regarding his injury and its cause. *Salazar v. American Sterilizer Co.*, 5 P.3d 357, 363 (Colo. Ct. App. 2000). "[S]uspicion of a possible connection does not necessarily put a reasonable person on notice of the nature, extent, and cause of an injury." *Id*. These issues are normally questions of fact, *id*., which I find particularly inappropriate for resolution on a motion to dismiss. The motions to dismiss are thus denied as to the negligence and product liability claims.

IV. CONCLUSION

Based upon the foregoing, it is

ORDERED that Defendant I-Flow Corporation's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) filed February 3, 2010 (ECF No. 17 filed February 3, 2010) and Defendants DJO, LLC's Motion to Dismiss Plaintiff's Complaint Pursuant to Fed.R.Civ.P. 12(b)(6) (ECF No. 24 filed February 12, 2010) are **GRANTED IN PART AND DENIED IN PART**. Specifically, it is

ORDERED that the Motions to Dismiss are **GRANTED** as to the breach of warranty claims (Claims Six and Eight) and **DENIED** as to the remaining claims against these Defendants.

Dated: August 12, 2010

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge